UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MICHAEL SAVINO,

                Plaintiff,

  -against-

JOINT INDUSTRY BOARD OF THE
ELECTRICAL INDUSTRY and PENSION
TRUST FUND OF THE PENSION
HOSPITALIZATION BENEFIT PLAN,

                Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
22-cv-682 (CBA) (PK)

**AMON, United States District Judge:**

      Following my decision granting summary judgment to Defendants on all counts of his original Complaint, Plaintiff Michael Savino brings one remaining claim against Defendants Joint Industry Board of the Electrical Industry (the "Joint Board") and the Pension Trust Fund of the Pension Hospitalization Benefit Plan (the "Plan") (collectively, "Defendants"), contending that Defendants' failure to provide adequate notice under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") subjects them to statutory penalties. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

### BACKGROUND

      These facts are taken from Defendants' Local Civil Rule 56.1(a) Statement (ECF Docket Entry ("D.E.") # 32 ("Defs.' 56.1")), Savino's response to Defendants' 56.1 Statement (D.E. # 35-1 ("Pl.'s 56.1")), and certain declarations and exhibits thereto, including Savino's declaration, (D.E. # 35-2 ("Savino Decl.")), the declaration of Laura Taylor-O'Boyle, an administrator of the Joint Board (D.E. # 34 ("Taylor-O'Boyle Decl.")), and the Administrative Record ("AR") (D.E. ## 19-3 through 19-7). Unless otherwise indicated, the facts in this section are undisputed. I

assume familiarity with the facts underlying my previous memorandum and order ruling on Defendants' first motion for summary judgment. (D.E. # 24.)

## I. Savino's Health Benefits Coverage

The Plan is an employee benefit plan established by collective bargaining agreements between Local Union No. 3 of the International Brotherhood of Electrical Workers ("Local 3") and employers in the electrical industry. (Defs.' 56.1 ¶ 1.) The Joint Board, which is made up of representatives from electrical employers and Local 3, administers the Plan. (Id. ¶ 2.)

Savino was an electrician, a Local 3 member, and a Plan participant. (Savino Decl. ¶¶ 3, 5.) Savino became a Local 3 member in 1988. (Id. ¶ 5.) Savino suffered an on-the-job injury and began receiving workers' compensation benefits effective May 8, 2017. (Id. ¶¶ 15-16; Defs.' 56.1 ¶¶ 6-7.) During the two years in which Savino collected workers' compensation benefits, he received free family health coverage. (Defs.' 56.1 ¶¶ 6-7.) Pursuant to the Plan, an injured participant who is on workers' compensation receives continued health benefits for a certain period of time. (Id. ¶ 35.) Specifically, a participant:

> [W]ho is unable to work due to a work-related injury and is receiving Workers' Compensation benefits shall remain eligible for coverage under this Plan until the earlier of:
>
> (1) The date on which the Participant ceases to be eligible for Workers' Compensation benefits; or
>
> (2) The date which is 2 years following the date on which the Participant first became unable to work because of the injury, including all periods during which Workers' Compensation benefits were received.

(AR 233.) Savino's free health coverage was scheduled to terminate pursuant to section (2), i.e., two years after May 8, 2017, the effective date of his workers' compensation benefits. Savino received free family health coverage as scheduled, from May 8, 2017, to May 5, 2019. (Defs.'

2

56.1 ¶¶ 6-7.) The Joint Board then extended this free family coverage through February 12, 2020. (Id. ¶ 8.)

In certain circumstances, the Plan allows a participant who ceases to qualify for health benefits to elect to continue those benefits for a defined period. (Id. ¶ 3.) A participant who qualifies for and opts for this extended health coverage, called "COBRA coverage," must pay for the cost of the health benefits themselves. (Id. ¶ 4.) The Joint Board's files contain an electronic copy of a March 27, 2019 letter to Savino, which explained that Savino was "[n]earing the end of 104 weeks of extended health coverage due to Workers Compensation"; that his health coverage was scheduled to end on May 4, 2019; and that "[i]f [he did] not elect COBRA continuation coverage, [his] health coverage w[ould] end" by that date. (AR 315 (emphasis in original); see also Taylor-O'Boyle Decl. Ex. A (same).) Taylor-O'Boyle, an Administrator of the Joint Board, attests that this letter was sent pursuant to the Joint Board's "standard procedure for mailing correspondence, using first-class mail and addressing the mailings to Savino's home address." (Taylor-O'Boyle Decl. ¶ 9.) Savino agrees with Defendants that he has resided and received mail at the home address to which the Joint Board mailed this COBRA notice. (Pl.'s 56.1 ¶ 5.) However, Taylor-O'Boyle attests that "Savino claimed not to have received the March 27, 2019 letter," and so the Plan extended Savino's coverage through February 21, 2020 and issued another COBRA notice to Savino at his home address dated February 21, 2020. (Taylor-O'Boyle Decl. ¶¶ 5, 7; AR 296 (copy of February 2020 COBRA notice).) At oral argument, Savino's counsel disputed that Savino was in touch with Taylor-O'Boyle in 2019 or 2020 and thus disputes the Plan's motivation for extending his coverage and for sending the second COBRA notice. (Transcript of Oral Argument held May 2, 2024 at 8.) He denies having received the COBRA notices from March 2019 and February 2020. (Savino Decl. ¶ 34.)

3

On June 28, 2021, Savino wrote to the Joint Board because he "found out" on June 9, 2021, through the receipt of uncovered medical bills, that health coverage for him and his family had been terminated. (Savino Decl. ¶ 33; AR 289.) He requested information about how to appeal the termination of his benefits and stated that he "wasn't given any notice or application for [COBRA]." (AR 289.) On August 6, 2021, Savino wrote to the Joint Board to request reinstatement of his free health coverage. (Savino Decl. ¶ 37; AR 288.) The Joint Board sent an additional COBRA notice on August 30, 2021. (AR 295; Taylor-O'Boyle Decl. Ex. C.)

By letter dated September 16, 2021, the Joint Board notified Savino that it had "considered [his] appeal for free COBRA continuation coverage" and was required to deny it. (Savino Decl. ¶ 38.) The letter stated that Savino had received the two years of health coverage to which he was entitled under the Plan and referred him to the provision limiting eligibility for health benefits to two years after the participant goes on workers' compensation. (Id. ¶¶ 38-39 (citing AR 285-86).) The letter further noted that Savino had not elected to pay for continued coverage under COBRA. (Id. ¶ 39.)

## II. Savino's Original Complaint and Defendants' First Motion for Summary Judgment

On February 7, 2022, Savino filed his Original Complaint against Defendants. Savino's first two claims sought the payment of the disability pension benefits due to him under the Plan and a declaratory judgment concerning his entitlement to those benefits. (D.E. # 1 ¶¶ 58-61.) His third claim challenged Defendants' alleged breach of fiduciary duty in connection with the Plan. (Id. ¶¶ 62-65.) Savino's fourth claim charged Defendants with acting in an arbitrary and capricious manner in denying Savino disability benefits, (id. ¶¶ 66-69), and his fifth claim asserted that Defendants failed to provide an adequate adverse benefit determination through the COBRA notices, (id. ¶¶ 70-74). Defendants moved for summary judgment, and I granted their motion in

its entirety on April 6, 2023.  (D.E. # 24.)  In my memorandum and order, I granted Savino leave to amend his Complaint to assert a cause of action for failure to provide COBRA notice.  (Id. 14.)  Savino filed his Amended Complaint asserting the COBRA notice cause of action on May 5, 2023.  (D.E. # 25 ("Am. Compl.").)  Following additional discovery, Defendants moved for summary judgment.  (D.E. # 32; D.E. # 33 ("Defs. Mot.").)

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and evidence that would be admissible at trial show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008).  This Court's function is not to resolve disputed issues of fact but "to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  Accordingly, "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005) (quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In determining whether the moving party has met its burden, I am required to "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted).  Nevertheless, "mere speculation and conjecture is insufficient to preclude the granting of" summary judgment. Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (citing W. World Ins. Co. v. Stack Oil, 922 F.2d 118, 121 (2d

5

Cir. 1990)). Rather, "the nonmoving party must 'set forth specific facts showing that there is a genuine issue for trial.'" Rubens v. Mason, 527 F.3d 252, 254 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

COBRA, which is part of ERISA, has a notice requirement. See 29 U.S.C. § 1166. The plan administrator, here the Joint Board, was required to notify Savino of his continuation coverage rights "within 14 days . . . of the date on which the administrator is notified" of a qualifying event. See id. §§ 1166(a)(4), (c). Savino contends that he never received the COBRA notices that were allegedly sent to him until long after his free health coverage ended in February 2020, the "qualifying event" in question. (Savino Decl. ¶¶ 33-35.) Under ERISA, a penalty of $110 per day may be imposed for failing to provide adequate COBRA notice. See 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-3. Upon a showing of prejudice or bad faith, Savino may be entitled to a penalty against the Joint Board. Zann Kwan v. Andalex Grp., LLC, 737 F.3d 834, 848-49 (2d Cir. 2013).

### I. Compliance With COBRA Notice Requirement

Savino argues that his rights under COBRA were violated because he did not receive timely notice of his right to COBRA continuation coverage. (Pl. Opp'n 5.) Defendants contend that the Joint Board sent Savino a timely COBRA notice dated February 21, 2020, within the requisite 14 days of the termination of Savino's free health care coverage on February 12, 2020. (Defs. Mot. 6.) Defendants further argue that even if there were a genuine dispute as to whether the Joint Board provided Savino with a timely COBRA notice, summary judgment should still be granted because there is no evidence that Defendants acted in bad faith or that Savino suffered any prejudice from his alleged failure to receive these COBRA notices. (Id. 11.) Savino admits that

6

his free coverage was extended through at least February 12, 2020, making this date the qualifying event for COBRA notice purposes. (Pl.'s 56.1 ¶ 8.)[1] His sole argument is that he did not actually receive the COBRA notices contained in the Administrative Record from March 27, 2019 and February 21, 2020. (D.E. # 35 ("Pl. Mot."); Pl.'s 56.1 ¶¶ 12-13 (denying Defendants' assertion that the Joint Board "mailed a COBRA notice to Savino . . . follow[ing] its standard procedure for mailing correspondence" on the grounds that "Plaintiff did not receive this COBRA notice").)

It is well settled that "[w]hen an employer mails a COBRA notice to the covered employee's last known address, the notice is reasonably calculated and the employer is 'deemed to be in good faith compliance with COBRA's notification requirements.'" Vangas v. Montefiore Med. Ctr., 823 F.3d 174, 183 (2d Cir. 2016) (quoting Hubicki v. Amtrak Nat. Passenger R. Co., 808 F. Supp. 192, 196 (E.D.N.Y. 1992)); Polito v. Tri-Wire Eng'g Sol., Inc., 699 F. Supp. 2d 480, 490 (E.D.N.Y. 2010) ("COBRA does not require actual receipt of notification by the plan participant; to the contrary, only a good faith attempt to notify is required.") (internal quotation marks and citation omitted). "COBRA contains no specific requirements as to the manner in which notice must be given." Id. at 489 (internal citation omitted).

Even under this generous standard, it is a close question whether Plaintiff has created a genuine issue of material fact on Defendants' compliance with the COBRA notice requirement. Taylor-O'Boyle attested in her sworn declaration that "[o]n or about March 27, 2019, the Joint Board's Members Records Department sent a letter to Savino at his home address at 23 Opp Ct, Staten Island, NY," which "notified Savino of his right to elect COBRA coverage"; that the Joint Board extended his free family coverage through February 12, 2020; and that "[o]n or about

---

[1] I note that in his Amended Complaint, Savino appears to assert that his coverage terminated on May 5, 2019. (Am. Compl. ¶ 37.) However, I accept Savino's concession in his Rule 56.1 Statement for the purpose of ruling on Defendants' motion.

February 21, 2020, at [her] request, the Joint Board's Members Records Department issued another COBRA notice to Savino at his home address." (Taylor-O'Boyle Decl. ¶¶ 4-7.) Both of these notices, which are included in the Administrative Record and attached as exhibits to Taylor-O'Boyle's declaration, apprised Savino of the termination of his coverage and provided instructions for electing COBRA coverage. (Id. Exs. A & B.) Taylor-O'Boyle further attested that "[e]ach time the Joint Board's Members Records Department issued a COBRA notice to Savino, it followed standard procedure for mailing correspondence, using first-class mail and addressing the mailings to Savino's home address." (Id. ¶ 9.) Savino confirmed that the Joint Board used the correct address for mailing the notices. (Pl.'s 56.1 ¶ 8.) However, he contests Defendants' assertions that the Joint Board actually mailed a COBRA notice to his home address and that the Joint Board followed its standard mailing procedure based solely on his assertion that he "did not receive this COBRA notice." (Id. ¶¶ 12-13.) When asked at a deposition whether he had "any knowledge that [the COBRA notice from February 2020] wasn't sent" to him, Savino answered that he had "[n]o knowledge that it wasn't sent to me." (D.E. # 36-1 ("Savino Dep.") 9:10-15.)

"Bare denials cannot defeat summary judgment." Ramos v. SEIU Loc. 74 Welfare Fund, No. 01-CV-2700 (SAS), 2002 WL 519731, at *5 & n.10 (S.D.N.Y. Apr. 5, 2002); see also Liles v. New York City Dep't of Educ., 516 F. Supp. 2d 297, 317 (S.D.N.Y. 2007) ("Plaintiff cannot state a claim under COBRA by merely claiming that he did not receive a letter that complied with the relevant notice provisions."). However, I find that there is at least a close question on this point because the record does not contain any sworn statements by individuals with personal knowledge that the COBRA notices contained in the Administrative Record were, in fact, sent, nor even any statement from Taylor-O'Boyle herself that she received confirmation—either oral or written—

8

from the Member Records Department that the COBRA notices she requested for Savino were actually sent according to the Joint Board's standard procedure for mailing correspondence.

In the cases Defendants cite, the prevailing defendants had offered something more than a declaration from an individual removed from the actual notice-mailing process. For example, in Vangas, the defendant offered testimony that there were computer records showing a benefits administrator's receipt of the plaintiff's file and that the COBRA notice was mailed. 823 F.3d at 183-84; see also Polito, 699 F. Supp. 2d at 489 ("[A]s required by law and as part of my job duties and responsibilities as the Human Resources Manager/Director, I notified plaintiff of her right to COBRA benefits by mailing to her a notification letter via first class mail dated October 7, 2005. At the time of the mailing of the COBRA notification letter, we did not have any issues with our mail, nor was the letter returned to our office as undeliverable.") (internal citation omitted). Yet the weight of case law suggests that Defendants' uncontradicted affidavits suffice to grant summary judgement on notice. Myrick v. Discover Bank, 662 F. App'x 179, 183 (3d Cir. 2016) (affirming summary judgment on similar evidence); Chiari v. N.Y. Racing Ass'n Inc., 972 F. Supp. 2d 346, 352, 365 (E.D.N.Y. 2013) (granting summary judgment on similar evidence); Robinson-Reeder v. Am. Council on Educ., 674 F. Supp. 2d 49, 57-58 (D.D.C. 2009) (same when records said notice was sent to the wrong address). Nonetheless, because there are some contrary decisions in the courts, see Crotty v. Dakotacare Admin. Servs., Inc., 455 F.3d 828, 832 (8th Cir. 2006); see also McGoldrick v. TruePosition, Inc., 623 F. Supp. 2d 619, 632-34 (E.D. Pa. 2009), I decline to grant summary judgment on this ground.

## II. Bad Faith and Prejudice

Defendants ultimately prevail because the record contains no evidence of bad faith or prejudice, and so I decline to award Savino any penalties in this case. As an initial matter, I note

that this determination is appropriate for the summary judgment stage, despite Plaintiff's argument that it is premature. (Pl. Opp'n 8); Zann Kwan, 737 F.3d at 848 (upholding a district court's dismissal of a claim for statutory penalties on summary judgment and noting that "[i]n assessing a claim for statutory penalties under ERISA, a district court should consider various factors, including 'bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary.'") (quoting Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 90 (2d Cir. 2001)); Johnson v. Riverhead Cent. Sch. Dist., 420 F. Supp. 3d 14, 29 (E.D.N.Y. 2018) ("Courts in this Circuit routinely dismiss claims [at summary judgment] for statutory penalties where plaintiffs fail to demonstrate that they suffered any harm.").

Plaintiff has failed to raise an issue of fact as to either bad faith or prejudice. Savino conceded at his deposition that he had "no reason to believe" that Defendants allegedly failed to send the COBRA notices "on purpose." (Savino Dep. 13:8-11.) There is no prejudice because the COBRA premiums the plaintiff would have had to pay exceeded the medical bills he incurred. Kwan, 737 F.3d at 848-49. Defendants submitted uncontested evidence showing that Savino's out-of-pocket medical expenses incurred as a result of his failure to receive COBRA notice total $8,462.89. (D.E. # 38-1.) Savino testified at his deposition that the Member Records Department told him that COBRA coverage would cost $30,000 annually. (Savino Dep. 32:4-10; see also id. 19:10-11 (Savino testifying that COBRA would cost "[i]n the ballpark of, like, $2,000 a month, like $2,400"); see also AR 302 (listing family coverage rates for those under 65 at $2,008.42 per month).) This far exceeds the cost of the medical bills he received. Kwan, 737 F.3d at 848-49 ("Kwan ha[d] also failed to demonstrate prejudice" where "she incurred medical bills of only a few hundred dollars" and COBRA coverage would have cost "hundreds or thousands of dollars

10

each month"). Moreover, when asked if he would have paid for COBRA had he been timely notified of the option to purchase COBRA continuation coverage, Savino answered "No." (Savino Dep. 30:19-23.) Savino further testified that he could not afford COBRA coverage at any point. (Id. 20:16-20 (Q: "So is it fair to say that at the time you wrote this letter, you did not have the financial resources to pay for COBRA even if you had wanted to? A: No, I do not. I still don't.").) He also confirmed that when he did learn COBRA coverage was available, he did not enroll in COBRA or any other medical coverage. (Id. 31:16-32:22); see Johnson, 420 F. Supp. 3d at 29-30 ("Plaintiff was neither harmed nor prejudiced" because "when Plaintiff ultimately received the belated COBRA notice, he still chose not to opt-into COBRA coverage"). Having found no evidence of bad faith or prejudice, I dismiss Savino's claim for statutory penalties.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

SO ORDERED.

Dated: January 13, 2025
Brooklyn, New York

/s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge